## APPEAL OF HAZLETT & MOSS, INC.

Docket No. 2247.   Submitted May 16, 1925.   Decided June 24, 1925.

1. Salaries allowed as a deduction to the extent of the payments made by the corporation during the taxable period and after its organization.

2. A corporation, 99 per cent of the stock of which was held by one stockholder, who produced only 20 per cent of its income and was not regularly engaged in the active conduct of its business, *held*, not a personal service corporation.

*John P. Hauch, C. P. A.*, for the taxpayer.
*J. Arthur Adams, Esq.*, for the Commissioner.

Before MARQUETTE, LANSDON, and GREEN.

The taxpayer has appealed from the determination of a deficiency in income and profits taxes in the sum of $1,619.91 for its taxable period commencing July 1, 1919, and ending December 31, 1919. The petition alleges two errors: First, the disallowance of a deduction for salaries which it is claimed were paid to officers of the corporation for services rendered to it after August 31, 1919, and before January 1, 1920; and, second, the denial of the taxpayer's claim that it is a personal service corporation.

### FINDINGS OF FACT.

The taxpayer, the successor of Hazlett & Moss, is a Pennsylvania corporation, engaged in the insurance business in Philadelphia. It filed a return for the period commencing July 1, 1919, and ending December 31, 1919. In this return it is expressly stated that the company is a corporation and that it was organized on the 1st day of July, 1919. One Pye, the vice president and general manager of the company and the only witness in the case, testified in answer to interrogatories propounded by counsel for the taxpayer that the cor-

poration was organized on the 11th day of September, 1919.    Counsel for the taxpayer thereupon produced the charter of the corporation dated September 11, 1919, and offered the same in evidence in corroboration of the witness's statement.    The return above referred to was subscribed and sworn to by the same Pye.

Two hundred and fifty shares of the capital stock of the company were issued.    Two hundred and forty-eight were held by Frank H. Moss, one share by the witness Pye, and one share by Mary B. Owen, she being a nominee of Moss.

During the period in question Moss owned and operated a mortgage brokerage business.    He advised the taxpayer in financial matters and produced about 20 per cent of its business.    The amount of his time devoted to its business is not disclosed.    Pye, under an arrangement between himself and Moss, was permitted to draw $400 per month.    Whether he rendered any service to the company or devoted any time to it does not appear from the record.    Approximately 40 per cent of the company's business was received from outside brokers and solicitors.

The arrangement between Moss and Pye above referred to was that Pye should receive one-half of the net profits of the business against which he could draw $400 per month.    This arrangement was made informally some time prior to the organization of the corporation.    No formal action was ever taken by the corporation. The profits were distributed in February, 1920.    The corporation kept its accounts on the accrual basis.    No proof was offered to show that any entry was made on the books of the corporation except the amounts actually paid Pye and Moss in 1919 and 1920.

### DECISION.

The deficiency should be computed in accordance with the following opinion.    Final determination will be settled on consent or on 10 days' notice, in accordance with Rule 50.

### OPINION.

GREEN : The corporation seeks to deduct as salaries for the taxable period the amounts paid Pye prior to the incorporation, the amounts paid him subsequent to the incorporation and prior to January 1, 1920, and the profits for the period subsequently distributed to Pye and Moss.

The arrangement between Pye and Moss as to Pye's compensation was made prior to the organization of the corporation and between individuals who were not, at the time the arrangement was made, stockholders of the corporation.    It was merely an agreement to continue the arrangement which Pye had with the predecessor

company. It was to become effective when the new company was organized. Such agreements are not binding upon a corporation until they are confirmed by the corporation. This corporation, so far as the corporate record discloses, never confirmed this arrangement. It did, however, pay Pye his drawing account in 1919 and distributed the net profits to Pye and Moss in February, 1920. This does not constitute an accrual, and the corporation may deduct only the amounts actually paid. Payments made under the arrangement above referred to and prior to the organization of the corporation on September 11, 1919, are not salaries or compensation paid by the taxpayer corporation, and we therefore hold that, of the $400 paid Pye for his services in the month of September, 1919, the corporation may deduct so much as represents the services rendered after September 11, and may deduct any amount actually paid him prior to January 1, 1920, and subsequent to September 31, 1919. We can find no justification for allowing the remainder of the amounts claimed as deductions for this taxable period.

The taxpayer was not a personal service corporation during the taxable period. The principal stockholder, owning over 99 per cent of the stock, produced only 20 per cent of the business and was not regularly engaged in the active conduct of its affairs.